UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>PRINCETON ALTERNATIVE FUNDING, LLC, MICROBILT CORPORATION, PHILIP N. BURGESS, JR., WALTER WOJCIECHOWSKI, and JOHN COOK, JR.<br><br>  Defendants. | **DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**<br>**DNJ Case No. 3:21-cv-12971-ZNQ-RLS** |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH DOCUMENT SUBPOENA
DIRECTED TO THIRD PARTY LAWRENCE WEST**

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendants Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr. ("Defendants"), by and through counsel, submit this memorandum in support of their Motion to Compel ("Motion to Compel") third party Lawrence West ("West") to produce documents and information in compliance with a properly served third-party subpoena in connection with litigation arising out of the District of New Jersey.

**SUMMARY**

Defendants bring this Motion to Compel West to comply with the third party subpoena duces tecum (the "Document Subpoena") served on or about October 3, 2022. Specifically, Defendants sought documents and communications related to West's role as consultant to Robert Farrell ("Farrell") and Robert Szostak ("Szostak").

6

On October 26, 2022, Defendants' counsel conferred via telephone with West concerning the Document Subpoena. West stated he maintained in his possession and control responsive documents to Requests 1, 2, 6 and 7. However, with regard to Request 6, West asserted that the responsive documents are subject to attorney-client privilege between him, Farrell and Szostak (the "Parties").

On or about January 6, 2023, West made an initial production of responsive documents to Defendants' Document Subpoena. West's production failed to include any responsive documents to Request 6 of the Defendants' Document Subpoena. West continues to hold the position that these documents and communications are subject to the attorney-client privilege. Counsel for Defendants has been unsuccessful in their attempts to resolve the discovery dispute concerning West's responsive documents to Request 6 of the Document Subpoena.

West has in his possession and control relevant and responsive documents to Defendants' narrowly tailored requests. West's objection to producing the responsive documents based on the attorney-client privilege is without merit. At no point was West's representation of Farrell and Szostak a legal representation. West was strictly a consultant to Farrell and Szostak on their whistleblower claim against some of the Defendants, which, is not a relationship subject to the attorney-client privilege.

**BACKGROUND**

The underlying litigation was filed on June 24, 2021. The SEC Complaint alleges that from March 2015 through February 2017, Defendants solicited investors to purchase limited partnership interests in Princeton Alternative Income Fund, LP ("PAIF") and its offshore feeder fund, Princeton Alternative Income Offshore Fund, Ltd. ("PAIOF") (collectively, the "Fund") through materially false and misleading statements. *See* Exhibit B (Complaint) ¶ 1.

The SEC Complaint identifies "Investor R" as an investment adviser to two pooled investment vehicles which collectively invested $6.8 million in PAIF and $55.1 million in PAIOF, making Investor R the largest investor in the Fund. *Id*. ¶ 14. "Investor R" is Ranger Alternative Management II, LP, and the two investment vehicles are Ranger Specialty Income Fund, LP and Ranger Direct Lending Fund Trust. Ranger Alternative Management, LLC is the general partner of Ranger Alternative Management II, LP (Ranger GP) (collectively referred to as "Ranger"). Ranger was the Fund's first and largest investor. *Id*. ¶ 82. On or about March 28, 2016, Ranger submitted a redemption request to the Fund. *Id*. ¶ 84. The SEC alleges, in part, that Defendants made false and misleading statements and omissions regarding Ranger and Ranger's request for redemption. *Id*. ¶¶ 83-86.

West is a consultant in Washington, D.C., and focuses his practice to representing whistleblowers in dealing with government agencies that enforce securities and similar laws, including the U.S. Securities and Exchange Commission. West is an attorney who retired from the practice of law in 2016 before beginning his current business. In his role as a consultant, West consulted with Farrell and Szostak on their whistleblower claims against Defendants. West has information relevant to the SEC investigation into PAIF and PAIOF, in addition to the Arbitration, among other pertinent issues. On September 16, 2022, Defendants attempted service of a valid Document Subpoena on West. *See* Exhibit C (Document Subpoena). After several unsuccessful attempts at service, on September 28, 2022, Defendants sent the Document Subpoena to the Maryland Department of Taxation for service.  On October 3, 2022, the Maryland Department of Taxation received Defendants' Document Subpoena and properly served West shortly thereafter.  *See* Exhibit D (Proof of Service, MD Division of Taxation).

Defendants' Document Subpoena sought the following narrowly tailored responsive documents from West:

(1) Any and all documents and communications that West produced to the SEC on behalf of Robert Farrell and/or Robert Szostak regarding Ranger, Princeton Alternative Funding, LLC MicroBilt Corporation, Philip Burgess, Walter Wojciechowski and/or John Cook, Jr. with specific bates numbers.

(2) Any and all documents and communications between West and the SEC regarding Ranger, Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip Burgess, Walter Wojciechowski and/or John Cook, Jr. with specific bates numbers.

(3) Any and all communications between West and Ranger, including but not limited to communications by/with Nimrod Hacker and any other of Ranger's attorneys, agents or affiliates.

(4) Any and all communications between West and Ballard, including but not limited to communications by/with Timothy D. Katsiff, David L. Axelrod, and any other of Ballard's attorney's, agent or affiliates.

(5) Any and all documents, notes, memorandum etc. written by West in connection with Ranger, Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip Burgess, Walter Wojciechowski and/or John Cook, Jr.

(6) Any and all documents concerning communications between West and Robert Farrell and/or Robert Szostak in connection with Ranger, Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip Burgess, Walter Wojciechowski and/or John Cook, Jr.

(7) Any engagement letter for consulting by West for Robert Farrell and/or Robert Szostak regarding any matter involving Ranger, Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip Burgess, Walter Wojciechowski and/or John Cook, Jr.

*See* Exhibit C.

On October 26, 2022, Defendants' counsel conferred via telephone with West concerning the Document Subpoena. West stated he possessed and controlled responsive documents to Requests 1, 2, 6 and 7. However, with regard to Request 6, West maintained the responsive documents are subject to attorney-client privilege between him, Robert Farrell (Farrell) and Robert Szostak ("Szostak").

On or about January 6, 2023, West made an initial production of responsive documents to Defendants' Document Subpoena. West did not include any responsive documents to Request 6 of the Defendants' request in the initial production. West continues to hold the position that these documents and communications between Farrell and Szostak are subject to the attorney-client privilege. Counsel for Defendants have been unsuccessful in their attempt to resolve the discovery dispute concerning West's responsive documents to Request 6 of the Document Subpoena.

## ARGUMENT

### A. West Possess Responsive Information Relevant to this Matter

The scope of discovery is set forth in Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 34 of the Federal Rules of Civil Procedure authorizes parties in a civil action to request from third parties, by Rule 45 subpoena, "documents and tangible things" within the scope of discovery permitted by Rule 26(b). *See* Fed. R. Civ. P. 34(c).

As discussed above, West has information relevant to the SEC investigation into PAIF and PAIOF, in addition to the Arbitration. This information is relevant to the claims and defenses at issue in this litigation. West acknowledges his possession and control of documents responsive to Defendants' requests, however, he refuses to produce documents responsive to Request 6 and objects to the requests with based on the attorney client privilege.

> *i.   West Has Not and Cannot Show that he Will Suffer an "Undue Burden"*

West is unable to demonstrate that he will suffer an "undue burden" by complying with the Document Subpoena and producing responsive documents to the Defendants. As a result, West should be required to comply with the Document Subpoena.

"Whether a subpoena places an undue burden ... such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed should be considered." *Trenton Renewable Power, LLC v. Denali Water Solutions, LLC*, 269 A.3d 519, 525-526 (N.J. App. Div. 2022) *citing Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) *quoting United States v. Int'l Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979).

West acknowledges that he maintains in his possession and control responsive documents to Defendants' requests. Production of the documents which West asserts are protected by the attorney-client privilege would not impose an undue burden on him, and West has not asserted that it would. Defendants are also willing, as they were previously, to assist in any production should West take the position that producing these documents would pose an undue burden.

      *ii.*    *West's Communications with Farrell and Szostak are not Subject to the Attorney-Client Privilege.*

West's communications with Farrell and Szostak concerning the Defendants are not subject to the attorney-client privilege and West should be required to produce.

The attorney-client privilege should be "narrowly construed to protect only the purposes which it serves." *Adams v. Franklin*, 924 A.2d 993, 998 (D.C. 2007). Therefore, the privilege "applies only in the following circumstances: (1) where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected,

11

(7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Id.* (quoting *Jones v. United States*, 828 A.2d 169, 175 (D.C. 2003)).

First, documents already produced by West, and Farrell and Szostak in the SEC matter, clearly show Farrell and Szostak did not view West as their attorney at any point between 2017 and 2022, and that it would have been unreasonable to do so. For example, West's public internet advertisements (which were removed from the internet around 2019) refer to West exclusively as a "consultant." *See* Exhibit E (internet advertisements). Those same internet advertisements state that as a whistleblower consultant West will "collaborate as needed with the leading attorneys in the SEC whistleblower field" and that "[t]his collaboration costs [West's clients] nothing additional." Further, West appears to have retired from the practice of law in 2016. See, Exhibit F (Latham+Watkins LLP profile). Accordingly, it is clear that West was not engaged to serve as legal counsel to Farrell and Szostak and did <u>not</u> represent that he would be acting as legal counsel.

It is equally clear that Farrell and Szostak knew that West was not acting as their attorney. For example—Farrell and Szostak refer to West as their "consultant" not as their attorney in their "Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell *and their consultant* Lawrence West, SEC Whistleblower Consultants LLC." *See* <u>Exhibit G (supplementary submission) (emphasis added)</u>; <u>Exhibit H (text thread)</u>. Their knowledge in this regard is furthermore aptly demonstrated by their September 2021 text message exchange where Szostak tells Farrell that they "have to discuss whether we have client attorney previlage [sic] with Larry." *Id*. In reply, Farrell says "I don't think we do." *Id.* Accordingly, neither Farrell nor Szostak believed that West was their attorney or that he was acting as an attorney on their behalf, and therefore could not maintain any expectation that communications would be subject to the

12

attorney-client privilege. Indeed, had that been the case, they undoubtedly would have claimed attorney-client privilege to this very text exchange.[1] That they did not is telling.

The Parties' original 2017 Retainer Agreement (the "Retainer Agreement") further confirms that West was not acting as Farrell's and Szostak's attorney, and Farrell and Szostak understood and acknowledged that limitation. The Retainer Agreement expressly provides: West was hired to assist "with respect to a submission of information to the US Securities and Exchange Commission ("SEC") and potential claim for award (the "SEC Whistleblower Claim")." Exhibit I (retainer agreement). The Retainer Agreement further stated "Lawrence West of SWC will act as Client's **consultant** in the Matter." *Id*. (emphasis added). Additionally, SWC's scope of representation of Farrell and Szostak was "limited to making its best efforts to obtain and maximize a whistleblower award for the Client in connection with the Matter." *Id*. There is no mention of providing legal advice or guidance.

This is not an idle distinction or wordsmithing. In conversations with West, he to Defendants admitted that he purposefully kept his whistleblower consulting work separate from any practice of law for various business and ethical reasons. This is also supported from West's website for SWC, currently inactive, wherein it advertises that SWC "collaborate[s] as needed with the leading attorneys in the SEC whistleblower field." *See* Exhibit E.

This changed in August 2022 when, at the request of Farrell and Szostak, West submitted an affidavit in connection with a pending matter in the Superior Court of New Jersey, *Robert Farrell, et al. v. MicroBilt Financial Services Corp., et al.* Consolidated Docket No. MER-C-6-16

---

[1] Indeed, as noted further herein, it was only after this admission that West, Farrell and Szostak all took steps in 2022 to create the appearance that there was an attorney-client relationship as far back as 2017. Had they truly believed such a relationship existed earlier, there would have been no need for their later actions.

("West's Affidavit"). See Exhibit J (affidavit). This activity was an attempt by Farrell and Szostak to avoid certain discovery concerning MicroBilt's counterclaims in that matter, among other things. In West's Affidavit, (and in direct contradiction to Farrell's and Szostak's understanding as well as the 2017 Retainer Agreement), West purported to describe his representation of Farrell and Szostak as an attorney-client relationship. Further, West's Affidavit states in part "in February 2017, if not sooner, I generally was thinking of myself as representing clients directly as their attorney, and was drafting retainer agreements accordingly." Id. This is not supported by the historical facts or the documentary record. In further contradiction to past documents and correspondence, West stated that "I personally and formally had represented Bob and Bert [Farrell and Szostak] as an attorney from the beginning of our formal relationship" and that "I also believe that Bert and Bob thought of me and/or SWC as their lawyer." Id.

In furtherance of the Parties' attempts to obscure the historic lack of an attorney-client relationship, on December 19, 2022, West—through SWC—executed a "new" retainer agreement with Farrell and Szostak that was back dated to February 2, 2017 (the "2022 Retainer Agreement"). Despite being executed in late 2022, that document purports to create an attorney-client relationship between West, Szostak and Farrell dating as far back as February 2017 or earlier ("2022 Retainer"). Exhibit K. Specifically, SWC's 2022 Retainer Agreement states:

> "[t]his agreement also represents the understanding between Client and Lawrence West of SWC as Client's counsel. For convenience, when SWC is referred to below in this Agreement, SWC also means Lawrence West acting as counsel to Client. This agreement memorializes the attorney-client relationship between Client and SWC that has been in effect since February 2, 2017 and that was subject of discussion between Client and SWC from the first communications between them, beginning before February 2, 2017." Id.

Even West's attorney malpractice insurance policies from before 2021 confirm that he was acting 100% as a whistleblower consultant and not as an attorney providing legal advice that would be subject to attorney-client privilege. See Exhibit L (insurance).

14

Accordingly, because there is no attorney-client relationship between West and Farrell and Szostak, West should be required to produce responsive documents to Defendants' requests.

### B. The Court Should Transfer the Motion to the District of New Jersey for Resolution Pursuant to its Authority Under F.R.C.P. 45(f).

Defendants respectfully request, pursuant to the Court's authority under F.R.C.P. 45(f), that the Motion to Compel be referred back to the District of New Jersey for resolution by the Federal Magistrate Judge that has been managing all discovery-related litigation in this matter.

Under F.R.C.P. 45(f), when the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances. *Id.* To enforce its order, the issuing court may transfer the order to the court where the motion was made.

In the absence of consent, the court may transfer in exceptional circumstances. The proponent of transfer bears the burden of showing that such circumstances are present. The primary concern is to avoid burdens on local nonparties subject to the subpoena. Transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when that court has already ruled on issues presented by the motion. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion. After transfer, the court where the action is pending will decide the motion. *Id.*

Should West not consent to transfer pursuant to F.R.C.P. 45(f), the Court should nonetheless transfer the matter. There are exceptional circumstances that warrant transfer in this litigation and transfer would not pose an undue burden on West. The underlying litigation is decidedly complex, with nearly one hundred witnesses having been identified in the parties' initial disclosures, millions of records produced in discovery, and a significant record of closely related

15

litigation over other discovery matters, including pending motions and motions to compel that have already been decided by the Federal Magistrate Judge. Several of those prior matters involve motions and filings made under seal. An expeditious ruling, in light of pending mediation which is scheduled to resume on April 10, 2023 (the pending motion having been filed in aid of the parties' mediation efforts), and with consideration of related matters that have been decided in this action, is critical to the litigation.

Notably, all discovery-related litigation in the District of New Jersey has proceeded by Zoom and/or telephone conference. No travel would be associated with the litigation of this Motion, posing no undue travel burden upon West. Indeed, resolution before the District of New Jersey, which has invested significant time addressing an array of issues arising out of this litigation, would most likely expedite consideration of this matter.

## CONCLUSION

For the foregoing reasons, this Court should transfer the Motion back to the District of New Jersey, or alternatively grant Defendants' Motion to Compel and enter an order requiring Lawrence West to comply with Defendants' third-party Document Subpoena. A proposed order is attached to this memorandum.

DATED: March 17, 2023             **ARMSTRONG TEASDALE LLP**

                                                */s/ Richard L. Scheff*

                                                Richard L. Scheff
                                                rlscheff@atllp.com
                                                2005 Market Street
                                                29th Floor, One Commerce Square
                                                Philadelphia, PA 19103
                                                (267) 780-2000
                                                *ATTORNEYS FOR PRINCETON ALTERNATIVE FUNDING, LLC, MICROBILT CORPORATION,*

*PHILIP N. BURGESS, JR., WALTER WOJCIECHOWSKI, AND JOHN COOK, JR.*

17