# EXHIBIT G

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

**SUMMARY**

This is a tip about a hedge fund fraud being run out of Princeton, NJ. The whistleblowers were recently insiders at the hedge fund. They allege in this tip that Phillip Burgess, a convicted felon who secretly controls the hedge fund manager, has intentionally failed to recognize a multi-million-dollar loss in 2016, knowingly mispriced the value of its largest credit line, and fraudulently positioned his company to obtain a $2 million performance fee when it should receive no performance fee.

**HOW PAIF AND PAF WORK**

Princeton Alternative Income Fund, LP (PAIF) is a hedge fund that provides credit lines to finance companies making consumer loans. Each month the finance companies pay PAIF interest and principal on the money borrowed on their credit line. PAIF distributes that interest to its investors, which are the limited partners, less the take of Princeton Alternative Funding (PAF), which is a fund management company and general partner of the Princeton Alternative Income Fund, LP (PAIF).

MicroBilt Financial, which is secretly owned and controlled by Philip Burgess, a convicted felon and the primary fraudster here, owns 52% of PAF. Burgess also secretly controls every aspect of PAF, PAIF, and MicroBilt Corporation, the parent company of MicroBilt Financial.

PAIF pays PAF a monthly management fee based on a percentage of AUM, and an Incentive Allocation ("performance fee") subject to a high water mark limitation. PAF gave its largest limited partner, Ranger Capital, a special rate of 1% annual management fee and 10% performance fee on the first $5 million they invested. After that Ranger got a special rate of 1.5% annual management fee and 15% performance fee. $55 million of Ranger's money is at the special rate. New investors pay 2 and 20. The whistleblowers estimate that PAF is currently eligible to earn close to a 16% performance fee overall, assuming the new money is paying 20%.

**HOW PAF VALUES ITS CREDIT LINES**

Each month PAF's finance companies submit a borrowing base certificate. This borrowing base certificate confirms the dollar balance amount the finance company owes on its credit line, as well as the value of the collateral backing the credit line. The consumer loans made by the finance company serve as the collateral. The principal owed on the consumer loans is considered its value for collateral purposes.

Szostak-000119318

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

If the value of the collateral (consumer loans) on the borrowing base certificate is less than the value of the dollar balance owed; a loss equal to the collateral shortfall is taken and the funds return for that month is reduced by that amount.

**EVENTS LEADING TO FRAUDULENT REPORT**

The following chronology is based in part on evidence presented in the bankruptcy hearing of Argon Credit, which represented nearly half of PAIF's AUM. The hearing was held in early January 2017 before Judge Deborah L. Thorne, US Bankruptcy Court for the Northern District of Illinois, Eastern Division.

**December 7, 2016** - Argon Credit visits PAF's office in Princeton New Jersey. The following is according to the testimony on January 5, 2017 of Walt Wojciechowski, CFO of PAF and the CEO of MicroBilt Corporation:

Burgess asks Eric Schnosenberg of Argon Credit, How much are you underwater? Schnosenberg answers $8 to 11 million. Wojciechowski testified that this statement "was just a time bomb to be thrown on us at that point in time. I can tell you I put my head down, and I just could not believe it." Wojciechowski was asked to explain why it was a time bomb at that time. He answered, "Well, basically I had just met with our auditors Liggett & Webb the day before, and I had just engaged them to do the audit for the year end 2016. And as part of that audit, they have to verify the lines of credit and the value of the portfolios, and one of the major audit points is the borrowing base certificate. Besides the confirmation to the lenders to explain how much, you know, they owe Princeton, they would also have to -- I basically showed them the borrowing base certificates to verify that. So at this point in time, I was being told that the borrowing base certificate was fraudulent, you know, that the borrowing base certificate that was submitted in October that said it was $35 million was 8 to $11 million under. That's a third of the line. This is not something that I can explain away. In fact, I made a comment to Ryan Gilbertson [of Northern Capital, who was introduced to Wojciechowski as a representative for one of the equity investors]. I said this probably needs a qualified opinion. You know, we have investors at this point in time. We have fiduciary responsibility to investors. This is 21 days before year end, and we find out that the borrowing base is under 8 to $11 million, and this is from the CFO." (Wojciechowski testimony -- pages 40-43)

According to Burgess's testimony on January 3, 2017:

"I mean, it was a huge bomb that was dropped on us, you know, 21 days before we have to start an audit for our fund, which starts this week. We had just made representations in the audit letter that, you know, we obviously had to go to clawback. I mean, it was huge and still is huge.

Szostak-000119319

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

We've got a couple of hundred employees in jeopardy because of what these guys did." (Burgess testimony -- page 40)

**December 16, 2016** - Argon Credit files for bankruptcy protection.

**January 3, 2017** - Philip Burgess testifies at Argon Credit's bankruptcy hearing.  (See excerpts above re December 7, 2016 meeting, and Burgess transcript, sent along with this memorandum.)

In this testimony, Burgess describes himself as an indirect consultant to Fund Recovery Services (FRS), a division of PAIF.  He testifies that his family owns a majority interest in Microbilt Corporation, and that Microbilt Corporation has a majority interest in PAIF, which is the predecessor in interest to FRS.  (The whistleblowers report that FRS was a new entity recently formed and controlled by Burgess and run by the same people who run PAF.)  Burgess testifies that he has owned Microbilt Corporation or its predecessors "for a little over 25 years, I think 28 years."

Citing an extensive Microbilt analysis, Burgess estimates Argon has only $18 to $18.5 million of good principal remaining on their loans.  That is $19 to $19.5 million less than the $37.5 shown on Argon Credit's borrowing base certificate.

**Jan 5, 2017** – PAF CFO Wojciechowski testifies at Argon Credit's bankruptcy hearing.  (See excerpts above re December 7, 2016 meeting, and Wojciechowski transcript, sent along with this memorandum.)

**January 9, 2017** – Court approves Chapter 7 bankruptcy for Argon Credit.  Princeton Alternative Funding takes control of the credit line and assigns it to Fund Recovery Services.

**PAF COMMITS FRAUD**

**January 27, 2017** – PAF's website reports the Princeton Alternative Income Fund returned 0.87% for December and 15.86% for the year.  This permits PAF to collect a $2 million performance fee.

**As of today, March 24, 2017** –PAIF is still reporting a return of 0.87% for December 2016 (unaudited).  It is also reporting returns of 1.22% for January 2017, and 1.12% for February 2017.  (See PAIF Net Returns sheet, sent along with this memorandum.)

The purported return of 0.87% for December 2016 is knowingly fraudulent.  However, Burgess has yet to declare the false 2016 numbers audited.  The whistleblowers still expect him to do so, but if Burgess gets cold feet and chooses to revise the announced December 2016 numbers and make them accurate, he can fall back on the "it was unaudited" excuse, and in the meantime he

3

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

will have attracted new investors into the fund who were unaware of the Argon losses. In fact, announced AUM has increased by $4 million already in 2017, according to numbers posted on BarclaysHedge.com and provided to that website by PAF.

The whistleblowers derive the $2 million performance fee number as follows:

After an audit is done at the end of the year, PAF receives a performance fee of 16% of the total return as discussed above. Ranger Capital (which provided PAIF with $65 million) is calculated at 15% and the whistleblowers are assuming the $12 million brought in during 2016 was for 20%. That creates a blended rate of 16% for the performance fee for 2016.

PAIF started the year with $65 million and brought in $12 million during the second half of 2016. Based on that, the whistleblowers are using an average AUM of $68 million for the full year.

PAIF has reported a 15.86% return for the year. This is a net number. PAIF's gross number is 18.63%. PAIF receives 84% of the gross return, and PAF receives the remaining 16%.

PAIF earned 18.63% gross return on the fund's average AUM for 2016.

$68,000,000 (average AUM for 2016) X 18.63% = $12,682,000 (total return)

PAIF total return. $12,682,000 X 16% (PAF performance fee) = $2,029,000.

Had PAF booked the estimated loss of $19 million in December as they should have, PAF's return would have been reduced by 22%, to a negative 21.13% for the month of December and negative 3.37% for the year. PAF's performance fee would have been wiped out.

PAIF's gross return shown above was $12,682,000 or 18.63%.

PAF estimated the Argon December portfolio loss at $19,000,000. Argon has $1,900,000 in loan loss reserve, making a net loss of $17,100,000.

$17,100,000 = 22% loss on PAIF's $77,000,000 AUM.

Subtract 22% loss from .87% (PAIF gross December return) = -21.3% PAIF return for December.

Subtract 22% loss from 18.63% (total return) = -3.37% total loss for the year for PAIF

4

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

## KEY ENTITIES AND PERSONS

**Princeton Alternative Funding LLC and Princeton Alternative Income Fund** – Princeton Alternative Funding (PAF) is a fund management company and general partner of the Princeton Alternative Income Fund, LP (PAIF). Both PAF and PAIF are located at 100 Canal Pointe Blvd., Suite 208, Princeton, NJ 08540.

PAF was created in 2014 by the two whistleblowers, Robert Szostak and Robert Farrell, MicroBilt Financial, and Alonzo Primus.

PAF raised funds from accredited and institutional investors and promoted itself as an opportunity to achieve substantial returns in the growing non-prime, small business lending space. Risk was to be mitigated by having a broad consumer loan base spread nationwide through geographical and industry verticals, which was intended to result in diversification and low risk correlation.

PAF described PAIF as an open-ended, 3(c)7 debt fund, with an investment strategy to invest substantially all its assets into organizations which will originate loans in the alternative marketspace. The Fund's investment objective is to provide investors consistent, risk-adjusted returns through direct loans to non-bank lenders operating in the alternative marketspace. PAIF said that it seeks to deliver high, non-correlated returns for sophisticated investors while mitigating risk through an exclusive corporate partnership with MicroBilt Corporation, a Consumer Reporting Agency regulated by the FTC and the CFPB and providing world class analytics and monitoring capabilities.

PAIF filed a Form D, signed by Whistleblower Farrell as Managing Member of PAF, with the SEC on February 25, 2015, to disclose an ongoing exempt offering of securities in the form of Pooled Investment Fund Interests and Limited Partnership Interests. PAIF's Confidential Private Placement Memorandum from September 2015 is attached to this memorandum.

Whistleblowers Farrell and Szostak's employment at PAF was terminated on January 4, 2016. After the two whistleblowers found out, on December 28, 2015, that they were not going to get paid their salary for the month of December, they sent an email to PAF CFO Walt Wojciechowski informing him that because they were not receiving their salary, they had until January 5, 2016, under their agreement with PAIF's largest limited partner, Ranger Capital, to inform them they could no longer perform their duties for the fund. Wojciechowski terminated the whistleblowers on January 4, 2016 to keep them from going to Ranger with that news.

Since their termination, the whistleblowers have had no involvement with PAF other than as passive part-owners. They currently own 42% of PAF. PAF co-founder MicroBilt Financial, which is secretly owned and controlled by Burgess, owns 52% of PAF. Co-founder Primus owns the remaining 6%.

Szostak-000119322

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

At the time the whistleblowers were committing to starting PAF, in 2014, Burgess told the two whistleblowers in a meeting at his office that he had no ownership of stock in MicroBilt Corporation. Wojciechowski was there and confirmed Burgess's statement. As a result, Burgess said, he would not have ownership in MicroBilt's interest in PAF. Farrell made clear to Burgess that he needed to be in charge of the fund and run it as he saw fit and that Burgess would have no control over it. Burgess and Wojciechowski both agreed to those terms.

MicroBilt's PAF shares were originally owned by MicroBilt Corp. They were put into MicroBilt Financial at a later date.

The whistleblowers, as 42% owners of PAF, are legally entitled to receive 42% of whatever portion of PAF's performance fees is legally distributed to owners of PAF. However, the whistleblowers do not expect any part of the performance fees to be distributed. Their operating agreement does not mandate any distribution. Instead, they expect the purported performance fees for 2016 to go to pay fraudulently inflated expenses. This is what occurred, the whistleblowers believe, in 2015 as well. Their expected performance fee of $480,000 for 2015 disappeared. They suspect Burgess had Wojciechowski move Microbilt expenses over to PAF until the performance fee was gone. Burgess then took the performance fee by billing Microbilt for consulting services. The whistleblowers currently are prosecuting a lawsuit to recoup the diverted 2015 performance fees. They believe Burgess will do the same this year, but the whistleblowers do not expect to try to obtain their share of the performance fees for 2016, based on the information provided in this submission, which indicates that performance fees for 2016 could be justified only fraudulently.

PAF is currently housed in the office of MicroBilt in New Jersey.

PAIF filed an amended Form D, signed by Walt Wojciechowski as Managing Member of PAF, with the SEC on April 6, 2016, to disclose that it has sold $61,900,000 in its ongoing offering of securities.

PAF disclosed on August 17, 2016, that it had returned 16.78% in its first year of management, had accumulated roughly $65 million under management in the first year, and aimed to significantly increase assets under management. PAF on its website, http://www.princetonalternativefunding.com, lists numerous awards that PAF says PAIF has received in 2016.

PAIF's December 2016 monthly update stated that by December 31, 2016, the fund had lent $77 million through credit lines to twelve finance companies, meaning PAIF had $77 million in Assets Under Management (AUM). The monthly update does not speak about individual credit lines, so the report had no comment about the Argon Credit Line.

6

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

PAIF is audited by Jim Liggett of Liggett & Webb, 432 Park Ave South, 10th Floor, New York, NY 10016. Liggett & Webb's website (http://www.lvwcpa.com) indicates that the firm employs just five CPAs, three in its New York office and two in its Florida office. The website lists "Finance Companies" among the industries the firm says it concentrates on, but does not mention investment funds. Liggett & Webb is also the accountant for MicroBilt Corp.

PAIF is not registered with the Commission, pursuant to Section 3(c)(7) of the Investment Company Act, which excludes from the definition of "investment company" any issuer whose outstanding securities are owned exclusively by "qualified purchasers." A qualified purchaser, if an individual, must have a minimum of $5 million in investments and $25 million in investments if a company or a trust entity. A hedge fund relying on Section 3(c)(7) may accept an unlimited number of qualified purchasers for investment in the fund. As a practical matter, however, most funds relying on Section 3(c)(7) have no more than 499 investors to avoid the registration and reporting requirements of the Securities Exchange Act of 1934.

**Philip Burgess** – Burgess secretly controls every aspect of PAF, PAIF, and MicroBilt Corporation, the parent company of MicroBilt Financial, PAF's majority partner. MicroBilt Corporation has annual sales of $25 million and employs over 150 people. However, because Burgess is a convicted felon, he stays behind the scenes and calls himself a consultant to all these entities. In 2008 he pleaded guilty to income tax evasion[1] and subsequently served eight months in the U.S. Penitentiary at Lewisburg.

**Whistleblower Robert Farrell** - Farrell was PAF's portfolio manager from its founding in 2014 until January 4, 2016. His duties included calculating the fund's monthly returns and value, so he is intimately familiar with the protocol for pricing the fund's credit lines. Farrell has 25 years of experience in the finance industry. He co-founded a successful hedge fund in 2001 and managed it through 2003. At that fund, he was responsible for pricing the fund's bonds in order to value the fund's portfolio. He earned a BS in Business Administration from the University of New Hampshire in 1978.

**Whistleblower Robert (Bert) Szostak** – Szostak's primary role at PAF from its founding in 2014 until January 4, 2016 was to market and raise money for the fund. He has worked in the financial services industry for more than 25 years, including for international brokerage firms GFI Group, ICAP, and Tullet Prebon. At these firms, Szostak held senior positions brokering Private Equity Limited Partnerships. Szostak earned a BS in Management & Finance from Susquehanna University in 1981.

---

[1] See https://www.justice.gov/sites/default/files/usao-nj/legacy/2014/09/02/Burgess%2C%20Philip%20Sentencing%20PR.pdf

Szostak-000119324

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

**Walt Wojciechowski -** Wojciechowski is the CFO of PAF and the CEO of MicroBilt Corporation. He takes orders directly from Burgess.

**Howard Davner** – Burgess hired Davner as PAF's CEO on March 3, 2016. Davner was a floor broker at Spear Leeds for twenty years. PAF's website says Davner was a founder and principal of Terrapin Advisors and Ryett Capital Partners, a long and short Hedge Fund with a successful track record, and that he was an equity specialist at Goldman Sachs and a member of NYSE. He has no prior experience running a credit hedge fund.

**Jack Cook -** Burgess hired Cook as PAF's COO and CCO on March 3, 2016. PAF's website says Cook was, like Davner, a founder of Terrapin Advisors, and was a Director at Credit Suisse in the Fixed Income Division. Cook testified in the legal proceeding described below that he has no prior experience running a hedge fund or pricing loan portfolios.

**SUGGESTED DOCUMENT REQUESTS FOR PAF AND/OR LIGGETT & WEBB**

All documents related to PAIF's 2015 or 2016 year-end audit.

All documents related to any audit or valuation work on principal remaining on Argon Credit collateral.

All documents related to how PAIF credit lines were valued.

Documents sufficient to show any changes made regarding methods for valuing PAIF credit lines and portfolio in 2015, 2016 or 2017.

All documents related to notifications to investors of changes to method for pricing credit lines and fund portfolio for 2015, 2016 or 2017.

All documents related to policies and procedures for recognizing and writing down impaired loans.

All documents related to November 2015, December 2015, November 2016, or December 2016 borrowing base certificates for all credit lines.

All documents related to November 2016, December 2016, January 2017, or February 2017 monthly settlement reports from Raible Wentz & Cornaglia for all credit lines.

All documents related to monthly reports sent to Ranger Capital from November 2016 through February 2017.

Szostak-000119325

March 24, 2017

# TCR1485531185211

Supplementary Submission of Whistleblowers Robert Szostak and Robert Farrell and their consultant Lawrence West, SEC Whistleblower Consultants LLC (301.887.7306)

Confidential Whistleblower Treatment Requested

All documents related to statements from Fundadministration for November 2016, December 2016, January 2017, or February 2017.

All documents related to 2016 disclosures of material information to investors.

Documents sufficient to identify all Princeton Alternative Funding personnel, officers, consultants, and other professional involved with calculating and/or reporting monthly return information to Liggett & Webb, Voght, Fundadministration, Ranger Capital and/or investors for November 2016, December 2016, January 2017, or February 2017.

Documents sufficient to identify any PAF credit lines that filed for bankruptcy in 2016 or 2017.

Documents sufficient to identify any credit lines PAF personnel, officers and/or consultants believe may have committed fraud against PAF and/or PAIF in 2016 or 2017.

All documents reflecting each person who became aware of the Argon Capital issue discussed in the December 7, 2016 meeting, and when that person became aware.

Documents sufficient to identify any credit lines whose borrowing base had eligible collateral less than 90% of the balance owed on the credit line, including the date this was discovered and the amount of the shortfall, and documents sufficient to show how the credit line was priced to reflect the collateral shortfall.

All documents related to bank statements for Argon Loan Loss Reserve account for December 2016, January 2017, or February 2017.

Produce a copy of the document described as Exhibit 4 in Burgess's Jan 3, 2017 testimony in the Argon Bankruptcy hearing.

**PEOPLE TO INTERVIEW**

Philip Burgess
Walter Wojciechowski
Howard Davner
Jack Cook
Jim Liggett of Liggett & Webb

Szostak-000119326