# EXHIBIT J



Superior Court of New Jersey
Attention: Honorable Timothy Lydon, P.J.
Ch. Chancery Division
Mercer County Courthouse
175 South Broad Street, 3rd
Floor Trenton, NJ 08650

**Re: Robert Farrell, et al. v. MicroBilt Financial Services Corp., et al.**
**Consolidated Docket No. MER-C-6-16**

Dear Judge Lydon,

At the request of my clients, Robert Farrell and Robert Szostak, I am providing the court with the attached affidavit.

Regards,

Lawrence West

### AFFIDAVIT OF LAWRENCE WEST

I, Lawrence A. West, hereby state that:

1. I am a lawyer in Washington, D.C. and a member in good standing of the bars of the District of Columbia and the State of Maryland.

2. My practice is currently limited to representing whistleblowers in dealing with government agencies that enforce securities and similar laws, including the U.S. Securities and Exchange Commission.

3. I began my whistleblower practice in mid-2016, using the name SEC Whistleblower Consultants LLC ("SWC"). At that time and for some months thereafter, I was in discussions with a law firm about my acting as a consultant to their practice. There were several potential advantages to this arrangement that were relevant to that law firm and to my personal situation that are not relevant to the issues in this matter, that by some point in early 2017 became irrelevant altogether, and that I will not go into here. I discussed with the law firm the idea that an attorney at that firm would supervise my work as a consultant so that my communications with clients would be privileged. During that same period, I also discussed with my wife, who was an attorney in good standing, that in cases in which the law firm did not want to be involved, I would act as a consultant and she would act as an attorney at SWC supervising my work so that my communications with clients would be privileged. My website, secwhistle.com, which is no longer functioning, used the word "we" but included only my name and not my wife's or anyone else's. It provided my credentials as an attorney in good standing and said that "we" would work with other attorneys "as needed" ( "We collaborate as needed with the leading attorneys in the whistleblower field. This collaboration costs you nothing additional.") In late 2016, my discussions with the law firm began to seem that they would not come to fruition, and by late February 2017, my email discussions with the law firm had stopped. My review of emails in some other cases and in this case shows that by some point in February 2017, if not sooner, I generally was thinking of myself as representing clients directly as their attorney, and was drafting retainer agreements accordingly,

1



without any consideration that I needed to be supervised by my wife or another lawyer for purposes of establishing and protecting attorney-client privilege.

4. The rest of this chronology is based to a large degree on my review over the past few days of relevant documents. At the end of January 2017, I was contacted by Robert Farrell and Bert Szostak (collectively, "Bob and Bert") in connection with a whistleblower tip they had filed with the SEC a few days before, on January 27, 2017, alleging securities law violations related to Princeton Alternative Funding and associated persons (the "SEC Matter").

5. I began to review the relevant documents herein because I received a call three days ago, on August 12, 2022, from a man who identified himself as Phillip Burgess. He indicated he was looking for a whistleblower attorney. I thought from the moment he gave his name that he might be the Phillip Burgess involved in the SEC Matter, but I was not sure. He asked me a number of questions, including whether I represented whistleblowers as a consultant or as an attorney. I did not give him an answer to that question. I asked him why he was asking and he did not give me a straight answer. At the end of the call, Burgess identified himself as the Phillip Burgess involved in the SEC Matter.

6. Before I began my recent review of relevant documents, my recollection was that I personally and formally had represented Bob and Bert as an attorney from the beginning of our formal relationship. My review showed that on February 2, 2017, I provided Bob and Bert with a draft "Retainer Agreement" in which they were to have a relationship with SWC and I was to act as a consultant. The draft Retainer Agreement discusses "Attorney's Fees", using those words. Specifically, SWC was to get as Attorney's Fees 1/3 of any whistleblower award Bob and Bert might get. That draft Retainer Agreement was signed by Bob and Bert but never signed by anyone on behalf of SWC. For that reason, I would characterize our current agreement as unwritten but clear and well understood by Bob and Bert and me. Now that the call from Burgess has made me aware of the status of the retainer agreement, I intend to send Bob and Bert a new draft retainer agreement, relating back to our first communications and characterizing me personally, not SWC, as their attorney, and to have the new agreement executed by all three of us.

7. On February 3, 2017, I sent Bob and Bert a draft Supplementary Submission to the SEC of Whistleblowers Robert Szostak and Robert Farrell "and their consultant Lawrence West, SEC Whistleblower Consultants LLC." I have no memory of having so represented myself in that draft. In any event, that representation in the draft Supplementary Submission is consistent with my idea at the time that I might in some cases characterize myself as a consultant while my wife acted as supervising attorney. For reasons I cannot recall and that do not show up in the email record, it was not until nearly two months later, on March 24, 2017, that I provided the Submission to the staff. It still said that I was "their consultant." Notwithstanding that characterization, I believe that after March 24, 2017, if not before, in my representation of Bob and Bert, I always thought of myself as their attorney personally and did not think of myself as a consultant being supervised by another attorney. I see nothing in the record of the SEC Matter after March 24, 2017, in which I again represented myself personally as a consultant rather than an attorney.

8. It is not my practice to write "Attorney-Client Privilege" or words to that effect on my emails with clients or to instruct my clients to do so, based on my view that labeling a document "privileged" does not make it privileged, and that once one begins to label documents privileged, privileged documents one has failed to label privileged arguably imply that they are not privileged merely due to the lack of one's customary privileged label.

9. Based on my review of the record and the facts recited above, I believe that all of my communications with Bob and/or Bert related to their seeking legal advice from SWC or my providing legal advice as an attorney or under the supervision of an SWC attorney, and so were covered by the attorney-client privilege. I also believe that Bert and Bob thought of me and/or SWC as their lawyer, and as laypeople acted reasonably in drawing the conclusion that their communications with me were covered by the attorney-client privilege.

I declare under penalty of perjury that the foregoing is true and correct.

*Lawrence A West* (signature)

Lawrence A. West

HOME ADDRESS

7721 Tomlinson Ave.

Cabin John, MD 20818

PHONE

301 887-7306

EMAIL ADDRESS

law.west@gmail.com

DATE 08/16/2022

DISTRICT OF COLUMBIA: SS
SUBSCRIBED AND SWORN TO BEFORE ME
THIS 15th DAY OF August, 2022
Kerris Mwitanti
NOTARY PUBLIC
My Commission Expires 06/30/2023

3